IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDRE RAMON CRAVER,

        Plaintiff,   No. CIV S 06-0362 RRB GGH  P

    vs.

DR. ROCHE, et al.,

        Defendants.   ORDER & FINDINGS AND

    _____/   RECOMMENDATIONS

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. By <u>Order</u> filed on June 15, 2007, defendants were directed, inter alia, to supplement, within twenty days, their briefing in opposition to plaintiff's motion for preliminary injunctive relief, filed on October 10, 2006. Defendants have supplemented their opposition[1] to plaintiff's preliminary injunction motion, and plaintiff has filed a reply to that supplemental opposition.[2]

---

[1] Defendants also, on June 20, 2007, filed a motion for summary judgment, which is not herein addressed.

[2] In addition to supplementing their opposition to plaintiff's motion for preliminary injunctive relief, defendants, as Exhibits D and E, have provided their further responses to plaintiff's discovery requests, pursuant to the June 15, 2007, order (although the court only sought proof of service thereof).

1

Complaint

This action proceeds on a complaint, filed on February 21, 2006, against defendants High Desert State Prison (HDSP) Chief Medical Officer (CMO) S.M. Roche, M.D., and Dr. Olga Roche.[3] Plaintiff contends that he arrived at HDSP on November 16, 2004. As of the filing of the instant complaint, plaintiff avers that he had had serious medical problems that were not addressed, notwithstanding his filing of grievances to the medical department. Plaintiff was seen by defendant S.M. Roche on December 7, 2004, who read a copy of the a review of records by Dr. Harry A. Khasigian, who testified in a criminal matter about plaintiff's serious medical condition. Plaintiff was placed on an orthopedic waiting list on that day, 12/7/04, but was not seen by the orthopedic specialist for several months despite having filed many grievances to obtain medical attention. Reference to plaintiff's exhibits indicates that he was seen by an in-house orthopedic specialist on February 17, 2005, and in that evaluation knee x-rays and a follow-up visit in 60 days were requested. Complaint, pp. 3-4 & Exhibit A.

On January 14, 2005, due to an incident in the exercise yard, plaintiff was forced to lie down in the exercise yard in the snow. Due to the degenerative knee disorder and arthritis from which he suffers, the arthritis in his knees was inflamed, causing him excruciating pain. Plaintiff notified an unidentified correctional officer (C/O), who failed to notify medical personnel. On January 15, 2005, plaintiff's pain was so intense that he could not move, affecting his daily activities, including hindering him from reaching the lavatory in time to avoid urinating on himself and his bunk. Id., p. 4.

When plaintiff informed defendant Roche of his serious medical condition and of the severely cold climate at HDSP, all he did was provide plaintiff with Tylenol for the pain of

---

[3] Defendants' filings have previously indicated Dickinson-Boican, rather than Dickinson, was this defendant's full surname, but now indicate that she has the same last name as that of defendant Roche. See Declaration of Dr. Olga Roche. The court will distinguish these individuals as defendant S.M. Roche and defendant O. Roche and will direct the Clerk of the Court to make the modification in the court's case docket.

arthritis, which was inadequate. Plaintiff had been transferred to HDSP from Tracy State Prison, where he had had an active prescription for (Darvastat) Propoxyphene/APOP 100/650 (1) tab, three times a day, prescribed from 11/09/04 through 12/09/04. The medical staff at HDSP ignored the prescription, giving him only Tylenol. Id.

When plaintiff saw defendant Dickinson-Boican (now Dr. O. Roche) on January 13, 2005, and informed her that the cold temperatures at HDSP, 35 degrees Fahrenheit and below, exacerbated his arthritis, she told him to complain to Sacramento. When he sought a transfer away from the cold climate, defendant S.M. Roche denied the transfer. Id.

Plaintiff states that he continues to suffer severe pain from the cold climate at HDSP and that the doctors at HDSP are aware of it and show only deliberate indifference to his serious medical condition in violation of the Eighth Amendment. Plaintiff attaches as Exhibits A through D, copies of medical chronos, Dr. Khasigian's evaluation, and his American with Disabilities (ADA) Placement Program Verification of which the doctors are aware. Defendants are aware of plaintiff's ADA status. Id., p. 5.

Plaintiff seeks money damages and injunctive relief in the form of a transfer from High Desert State Prison.

Motion for a Preliminary Injunction

*Legal Standard*

The legal principles applicable to a request for injunctive relief are well established. To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor. See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. Oakland Tribune, 762 F.2d at 1376. "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of

1  irreparable injury." Id.  In the absence of a significant showing of possible irreparable harm, the
2  court need not reach the issue of likelihood of success on the merits.  Id.
3           In cases brought by prisoners involving conditions of confinement, any
4  preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the
5  harm the court finds requires preliminary relief, and be the least intrusive means necessary to
6  correct the harm."  18 U.S.C. § 3626(a)(2).
7           *Background of Motion*
8           As noted in its prior order (filed June 15, 2007), plaintiff has brought a motion for
9  preliminary injunctive relief in the form of a transfer from HDSP due to his arthritic condition
10  and degenerative knee disorders described above.  Plaintiff asserts that, in addition to arthritis, he
11  suffers from a torn cartilege, meniscus, and ligaments in both knees with his left knee
12  permanently out of alignment and tending to go out at any time.  Plaintiff states that the
13  degenerative joint arthritis limits his range of motion and causes unbearable pain.  Plaintiff
14  claims that it snows at HDSP, and the temperature through much of the year is very cold.  The
15  concrete and metal cells bring the ambient temperature to less than 20 degrees Fahrenheit; even
16  putting on all his prison-issued clothing does not alleviate his arthritis.  Motion, pp. 1-2.
17           Plaintiff maintains that his medical history demonstrates that his pain has been
18  treated with narcotics in the past, but that the doctors at HDSP refuse to provide him with
19  anything but Tylenol, which plaintiff claims is ineffective unless he takes fifteen at a time, four
20  times a day, which he believes endangers his health.  At the time of filing his motion, plaintiff
21  claims that he is not even being provided Tylenol at HDSP.  Id., p. 2.
22           Plaintiff states that he will ultimately need bilateral knee replacement surgery, but
23  that due to his age and the short life of artificial knees, he is not likely to be referred for surgery
24  until his latter years.  Thus, in the interim, he needs narcotic pain medication to manage the pain.
25  Plaintiff contends that he has been cautioned not to move to places where there is snow or the
26  temperatures become extremely cold.  Plaintiff states that he gave the defendants a report about

his chronic condition upon his arrival at HDSP. Plaintiff states that he is a maximum security inmate but that several institutions that house ADA mobility impaired inmates could house him: California Medical Facility (CMF); Salinas Valley State Prison; Corcoran State Prison. Motion, pp. 2-3.

In directing defendants to supplement their initial response to plaintiff's motion, the court directed defendants to include, at a minimum, an expert's declaration as to plaintiff's current medical condition and treatment; whether or not HDSP's cold temperatures and snow conditions can be tolerated by plaintiff in light of his medical condition; how Tylenol is or is not adequate to meet plaintiff's medical needs; and why, if he has, in light of the chronic pain from which plaintiff claims to suffer, plaintiff has, if he has, been deprived of medication, even Tylenol. See Order, filed on 6/15/07, pp. 5-6.

*Defendants' Supplemental Opposition*

Defendants contend that plaintiff's claim that he needs a narcotic pain medication, such as Darvocet,[4] for osteoarthritis pain is not substantiated. Opposition (Opp.), p. 1, citing Exhibit A, Declaration of defendant Dr. S. M. Roche, HDSP Chief Medical Officer (S.M. Roche Dec I)[5]; Exhibit B, Declaration of defendant Dr Olga Roche, formerly Dr. Dickinson-Boican (O. Roche Dec); and Exhibit C, Declaration of Dr. S.M. Roche in Support of Supplemental Brief in Opposition to plaintiff's request for injunctive relief (S.M. Roche Dec II).[6] Defendant S.M. Roche states that, in his professional medical opinion, Darvocet is inappropriate to treat plaintiff's pain complaints because it is highly addictive and because it is not used for chronic

---

[4] Defendants refer to "Darvocet," rather than plaintiff's appellation "Darvastat."

[5] Both Exhibit A and Exhibit B are declarations that were prepared in support of defendants' motion for summary judgment, according to defendants, but are attached to the supplemental opposition as well. Exhibit C, defendant Dr. S.M. Roche's second declaration was evidently prepared specifically for the opposition to plaintiff's motion for a preliminary injunction.

[6] Each of the declarations submitted refers to HDSP as High "Dessert," rather than High Desert State Prison, an odd, but obvious, typographical error.

conditions, but rather is effective for short-term relief from severe musculoskeletal[7] injuries. S.M. Roche Dec I, ¶ 3. Defendant Dr. S.M. Roche describes arthritis as a chronic condition, typically resulting in damage to the affected joints and that non-steroidal anti-inflammatory medications (NSAIDS) are usually prescribed for patients who suffer from osteoarthritis. Id., ¶ 4. Motrin is an example of a NSAID that can effectively control and relieve osteoarthritic pain, and Tylenol, another over-the-counter medication, can be effective in the treatment of such pain; NSAIDS and Tylenol are non-addictive, can be taken on an "as-needed" basis for long-term care and are appropriate medications for plaintiff's complaints at this time, according to defendant S.M. Roche. Id. Further, plaintiff's claim that the weather conditions at HDSP cause his arthritis to worsen or "flare up" is incorrect because osteoarthritis is not caused by cold weather or snow, and does not flare up in such conditions. Id., ¶5. Rather, weather changes can cause symptoms of osteoarthritis to worsen temporarily, but such changes occur practically anywhere. Id. A person with osteoarthritis in one climate will have arthritis even in warmer climates. Id.

   Defendant Dr. O. Roche agrees with defendant Dr. S.M. Roche that Darvocet would not be an effective control for plaintiff's pain, that it is highly addictive, and is only effective in the short-term for relief from severe musculoskeletal injuries. O. Roche Dec, ¶ 3. Defendant O. Roche describes arthritis as a chronic condition, typically resulting in pain due to joint "wear and tear." Id., ¶ 4. Dr. O. Roche also states that NSAIDS are prescribed for patients with arthritis, that the NSAID Motrin controls arthritis pain and swelling effectively, that Tylenol controls arthritis pain, and that NSAIDS and Tylenol are non-addictive and can be taken long term "as needed." Id.

\\\\\

---

[7] Although defendants, both physicians, spell this word throughout their declarations as "muscelo-skeletal," as far as the court can discern, the actual spelling is "musculoskeletal" (see Merck Manuals Online Medical Library), and the court will use that spelling. The spelling plaintiff gives the term is "musculosketlal," which appears to be a misspelling picked up from a misprint on the CDCR form chrono that plaintiff submits as Exhibit A to his reply.

Defendant S. M. Roche attaches the chart notes for plaintiff's medical treatment for the past six (6) months, observing that plaintiff suffers, according to his evaluation, "from a mild case of osteoarthritis in his right knee." S.M. Roche Dec II, ¶ 3. A February 20, 2007, MRI scan revealed mild arthritis, but no structural knee damage. Id. According to S.M. Roche, plaintiff has not asked for treatment specific to his knee since November of 2006. Id. ¶ 4. Although he did mention knee pain on May 4, 2007, defendant S.M. Roche declares that plaintiff has not sought further treatment or new medication since the February 20, 2007, MRI. Id. Plaintiff has an active Tylenol prescription, two tablets, three times daily, as needed for pain, of which he has a supply in his cell and for which he needs no medical assistance or examination to take, according to defendant S.M. Roche. Id.

Over the past six months, plaintiff has complained of many other pain and ailments; plaintiff has been diagnosed with asthma and provided with an inhaler, which he refuses to use, states defendant CMO Roche. Id. ¶ 5. Defendant S.M. Roche also avers that plaintiff has demonstrated a failure to follow medical advice following other examinations. Id.

During his treatment on May 4, 2007, the treating physician had to summon a correctional officer due to plaintiff's outburst. S.M. Roche Dec II, ¶ 6. During this episode, plaintiff "was able to move freely and swiftly without the aid of a cane....[t]his ability to move on his arthritic knee is important, as it proves the pain that plaintiff complains of is not truly debilitating." Id.[8]

Despite defendant S.M. Roche's belief that plaintiff is receiving good care for his arthritis as well as other medical complaints, Dr. S.M. Roche intends to schedule an appointment for plaintiff with a rheumatologist, declaring that should the specialist indicate that plaintiff needs medical care and prescriptions other than Tylenol, "medical staff will re-evaluate

---

[8] Although defendant S.M. Roche does not qualify his recounting of this incident as based on information and belief, he does not clarify by stating either he was the treating physician on this occasion, or, if he was not, the basis for his declaration on this point; i.e,, a review of plaintiff's medical record or a report from a CDCR employee.

plaintiff's condition." S.M. Roche Dec II, ¶ 7.

Dr. S. M. Roche concludes by reinforcing, and indeed expanding upon, his medical evaluation in his first declaration (Exhibit A):

> [I]t would be imprudent to prescribe narcotic pain medication to plaintiff for pain associated with arthritis. Narcotic pain medication would produce a feeling of temporary euphoria for plaintiff, during which feelings of pain throughout his body would be dull. Narcotic medication would not reduce swelling associated with arthritis and would not "cure" plaintiff's arthritis. Since narcotic pain medication is highly addictive, the potential detriment of prescribing this type of medication to plaintiff herein is far outweighed by any nominal benefit plaintiff might experience. Prescribing narcotic pain medication to plaintiff herein, for complaints of pain associated with osteoarthritis, would be bad medical practice and should be discouraged by all.

Defendants' Exhibit C, S.M. Roche Dec II, ¶ 8.

*Reply*

Plaintiff contends that his knee condition is far more severe than as characterized by defendants. Plaintiff, a pro se party, does not properly authenticate his copies of his medical and other records, but for the purposes of this motion, there is nothing to suggest they are inaccurate. As Exhibit A to his reply, plaintiff includes a copy of what he describes as a placement chrono provided by Dr. Rohlfing, wherein the box is checked indicating that plaintiff suffers from musculoskeletal disorder. Plaintiff submits the exhibit in an effort to belie defendant S.M. Roche's evaluation that plaintiff suffers only from osteoarthritis. Reply, pp. 1-2. The court notes that in his first declaration, S.M. Roche stated that Darvocet is inappropriate to treat plaintiff's pain complaints due to its addictive properties and because it is not used for chronic conditions, but rather is effective for short-term relief from severe musculoskeletal injuries. S.M. Roche Dec I, ¶ 3. Thus, whether or not plaintiff has a "musculoskeletal disorder" (which is marked on the form as a reason for restricted duty) or, suffers from a chronic condition only, is not made clear, nor is the significance of the difference fully explored.

\\\\\

Plaintiff also takes defendant S.M. Roche to task for submitting what plaintiff terms a "doctored up" MRI, showing only mild osteoarthritis of the right knee. In his declaration, as noted above, defendant S. M. Roche states that plaintiff suffers "from a mild case of osteoarthritis in his right knee." S.M. Roche Dec II, ¶ 3. Plaintiff's Exhibit B is, according to plaintiff, a radiology report ordered by a Dr. French on 2/15/06, which sets forth the following as impressions:

> 1) Left knee: Osteroarthritis. Findings suggesting prior medial and lateral collateral ligament attachment injuries on the femoral side.
> 2) Right knee: Osteoarthritic change. Findings suggesting collateral ligamentous laxity. 3) MRI of the knees may be helpful if indicated.

Exhibit B to Reply.

Plaintiff points to Exhibit D to his complaint (which has evidently become Exhibit K to his opposition to the motion for summary judgment defendants have filed). This document is identified on letterhead of the "Pacific Evaluations Medical Group" as a review of records by Dr. Harry Khasigian, dated June 25, 2004. Dr. Khasigian's review in 2004 noted that the records indicate that plaintiff "has intermittently been on Celebrex and Vicodin for pain," and that he has "used a cane or crutch intermittently." Complaint, Exhibit D. The court will not quote extensively from Dr. Khasigian's medical evaluation because the court lacks the medical expertise to interpret the evaluation, but sets forth the following excerpt:

> The provisional diagnosis regarding his left knee would be history of patellar dislocation, x-ray findings consistent with chronic patellar subluxation and patellofemoral misalignment with progressive patellofemoral degeneration. Also included would be evidence of lateral compartment degenerative arthritis and a suprapatellar loose body.

Exhibit D to Complaint, p. 2.

In the record evaluation, Dr. Khasagian makes the assessment that significant physical activity by plaintiff would likely result in swelling, a limp and difficulty walking due to the condition of his left knee. He further opines that various activities involving the left knee,

activities not described in the report but evidently inquired about by the report's intended recipient, would be more likely than not to produce pain and swelling and diminished gait function and would preclude normal running and jumping and require the need for "anti-inflammatories and pain medication." Id.

Plaintiff then goes on to challenge defendant S. M. Roche's credibility for stating that plaintiff has not sought further medical treatment for his knees since March of 2006. In fact, however, in his second declaration, defendant S.M. Roche states that plaintiff has not asked for treatment specific to his knee since November (not March) of 2006. S.M. Roche Dec II , ¶ 4. The defendant does seem to undercut this representation by adding that plaintiff did mention knee pain on May 4, 2007, but has not sought new medication or additional treatment for his knee since his February 20, 2007, MRI scan. S.M. Roche Dec II , ¶¶ 3-4.

As to the November, 2006, date at which point defendant S.M. Roche initially states plaintiff did not seek further treatment for his knee, plaintiff attaches, as Exhibit C to his reply, a copy of a Health Care Services Physician Request, dated 12/19/06, which indicates, following "Medical Necessity" on the form: "Synvisc injection into both knee [sic] recommended by Dr. Hyerman" with the requesting physician signed as "M. Miller," and "Wm. Hyerman, M.D.," listed as "consultant." The request is dated approved on 12/20/06. Plaintiff states that he was transported to Redding in March, 2007, and received the shots from Dr. Hyerman in both knees once a week for three weeks; the injections were designed to relieve pain for six to nine months. Reply, p. 2. Plaintiff asks the court to require defendants to provide the records for this treatment because special transportation had to be arranged to escort plaintiff to Redding. Plaintiff also points out that one of the medical record exhibits for plaintiff attached to defendant S.M. Roche's (second) declaration in opposition to plaintiff's motion, which plaintiff attaches as his own Exhibit D, is physician's order which notes plaintiff's allergy to Ibuprofen and NSAIDS. In fact, the court's review indicates that in the authenticated medical records submitted by defendant S.M. Roche, there are at least four instances where either plaintiff's

allergy to Ibupofen and NSAIDS, or his allergy to Ibuprofen alone, is noted.

Plaintiff avers that defendant S.M. Roche does not know whether or not plaintiff has Tylenol in his cell, as defendant states. Reply, pp. 2-3. Plaintiff goes on to complain about not having received any pain medication from HDSP during his first year there and that he first received the "non-effective" Tylenol on 12/08/05, even though he was seen by defendant S.M. Roche on 12/07/04, (a year earlier). Reply, p. 3, Exhibit E. Plaintiff then complains of a lack of response for medical conditions not the subject of this lawsuit, such as blurred vision or his request for an HIV test. Reply, p. 3. He claims that defendants have submitted "lies" to the court and are trying to commit "medical murder" of him. Id. Plaintiff contends that the weather at HDSP goes below 15 degrees Fahrenheit and that during incidents on the exercise yard, he can be made to lie in the snow for long periods of time. Id., at 4. While he concedes that his arthritis condition would be present no matter where he resides in California, he continues to complain of the "extremely cold" temperatures at HDSP, and that the doctors do not prescribe him adequate pain medication. Defendant S.M. Roche indicated that he could only recommend medical transfers (which his review indicated was not warranted in plaintiff's case), S.M. Roche Dec II , ¶ 2, but plaintiff views the representation that CMO Roche does not have the authority to transfer inmates for medical reasons as a "lie," attaching as Exhibit G-2, a document signed by Associate Warden, S. Armoskus, apparently for the purpose of indicating that medical necessity is an exception to a no-transfer policy. Reply, p. 4. Plaintiff concludes with a request for an immediate transfer within ninety (90) days. Id., at 5.

*Legal Standard for Eighth Amendment Claim*

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter,

501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant."  McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated, and continues to equate with deliberate indifference, that is, that he is subject to irreparable harm should he not be transferred immediately, plaintiff's motion for a preliminary injunction must be denied.

*Discussion*

The primary purpose of plaintiff's motion is to secure a transfer to another prison based on the cold temperatures at HDSP and upon the alleged lack of appropriate pain treatment for his osteoarthritis. While the court finds that defendants adequately refute plaintiff's assertions that his condition is deleteriously affected by the cold and snow at HDSP, it finds somewhat disturbing that defendant S.M. Roche's review of plaintiff's medical records apparently did not yield the evidence of the synvisc shots plaintiff claims to have received in March of 2007, in both knees, and for which he provided at least a copy of the 12/19/06 physician request; that this defendant is evidently not aware that plaintiff also has some form of osteoarthritis in his left, as well as his right, knee; that at least one physician has found that plaintiff has "musculoskeletal disorder;" and that plaintiff has been repeatedly noted to have an allergy to Ibuprofen and NSAIDS. It is also disturbing that, while defendant O. Roche, also touts the efficacy of treatment of arthritis with NSAIDS, that she also does not reference plaintiff's apparent allergy to such medication.[9]

On the other hand, plaintiff does not present expert medical evidence to refute the medical knowledge of defendants insofar as their assessment of the appropriateness of long-term treatment for his pain in the form of addictive narcotics. Nor does his concern that his osteoarthritis and pain is exacerbated because he is subjected to the cold temperatures at HDSP legitimated by the expert medical testimony presented, as noted. That plaintiff may not have

---

[9] According to the court's limited research, Tylenol is an over-the-counter brand name for acetaminophen, which is not an anti-inflammatory. Ibuprofen comes in over-the-counter brands such as Motrin and Advil, and has chemical properties similar to aspirin, but in lower doses apparently irritates the esophagus and stomach lining less than aspirin.

received the pain medication he sought in the past does not warrant a medical transfer either at this time, particularly when plaintiff describes having recently received a series of synvisc injections to his affected knees that are supposed to relieve his pain for up to nine months. The apparent lack of thoroughness of defendant S.M. Roche's review and analysis of plaintiff's relevant medical record and condition, including the outright confusion presented in his finding that plaintiff did not seek further medical treatment for his knee (or knees) at a certain point, when plaintiff not only apparently did do so, but subsequently also appears to have received such treatment, does not bode particularly well for the outcome of the pending dispositive motion, at least from defendants' perspective. However, plaintiff, on the other hand, does not make the requisite showing on this motion that a medical transfer from HDSP is warranted, or that plaintiff should be immediately prescribed narcotic pain medication.

While plaintiff may raise serious questions about his knee condition, which differ from defendants' characterizations, plaintiff fails to show by a preponderance of the evidence that he is subject to irreparable harm if he remains incarcerated at High Desert. Plaintiff's knee condition is what it is, and remaining at High Desert will not make it worse. In addition, the court is not convinced that plaintiff will ever be pain free, and that the colder climate at High Desert will not significantly exacerbate knee pain.

Nor do the balance of hardships tip in plaintiff's favor. The court is not blind to the fact that prisoners cannot have transfer on demand, i.e., organizing which prisons should house which prisoners is a monumental task given all the considerations necessary. Moreover, the undersigned senses some attempted manipulation by plaintiff concerning his condition especially in the area of obtaining long-term prescriptions of narcotic drugs. Even plaintiff should agree that having prisoners dependent on narcotic substances while in prison is not a good idea, and should be avoided if at all possible. The needs of prison management have been shown, at least at this juncture, to outweigh plaintiff's desires for stronger drugs and a transfer.

\\\\\

Accordingly, IT IS ORDERED that the Clerk of the Court modify the name of the two defendants in this action as follows: defendant Dr. Roche should be identified as defendant Dr. S.M. Roche, and the name of defendant Dr. Dickinson (or Dickinson-Boican) is to be updated and modified in the electronic docket of this case to reflect that her name is now Dr. O. Roche.

IT IS RECOMMENDED that plaintiff's motion for preliminary injunctive relief, filed on October 10, 2006, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 8/16/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
crav0362.pi