1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDRE RAMON CRAVER,

11          Plaintiff,                    No. CIV S 06-0362 RRB GGH  P

12      vs.

13   DR. ROCHE, et al.,

14          Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court is defendants' motion for summary judgment, filed on June 20,

19   2007, to which plaintiff filed his opposition on July 9, 2007; defendants' reply was filed on July

20   20, 2007.[1]

21          The instant motion reveals the problems in prisoner litigation summary judgment

22   motions, especially in adjudicating a medical complaint.  The moving defendants rely on their

23   expertise to defeat the claims of a layperson who fills the court record with medical records and

24   _____

25          [1] Plaintiff subsequently filed a "reply and objections" to defendants' Reply, on August 8, 2007, to which defendants filed an objection on August 10, 2007.  Plaintiff's August 8, 2007, filing is a pleading not contemplated by the Federal Rules of Civil Procedure or the Local Rules,

26   which the court will not consider.

1

1    other documents essentially asking the court to interpret them.  Despite the moniker of a "neutral

2    adjudicator," the trial judge is compelled by some Ninth Circuit case law to search the record for

3    evidence supporting the position of the pro se litigator, Jones v. Blanas, 393 F.3d 918, 923 (9th

4    Cir. 2004) ("we must consider as evidence in his opposition to summary judgment all of [the pro

5    se plaintiff's] [potentially admissible] contentions offered in motions and pleadings"), said

6    evidence not having to be in admissible form, but merely susceptible of being placed in such

7    form at trial.  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); see also Aholeli v. Hawaii

8    Dept. Of Public Safety, 220 Fed. Appx. 670 (9th Cir. 2007).

9            The court has set forth the facts pertinent to this motion in exhaustive, if not

10   painful, detail. While not every contention of plaintiff defeats summary judgment, there is

11   sufficient question from the morass of records which suggest that granting a summary judgment

12   motion would be inappropriate.  Categorizing all of plaintiff's claimed incidents of mistreatment

13   into the general categories of: misdiagnosis, delayed treatment, lack of proper treatment,

14   including prescribing medicine, and failure to transfer, an issue of fact in each category precludes

15   judgment at this time.

16   Complaint

17           The court references its previous summary of plaintiff's allegations herein.  See

18   Findings and Recommendations, filed on August 16, 2007, pp. 2-3, adopted by Order, filed on

19   January 11, 2007 (denying plaintiff's October 10, 2006, motion for preliminary injunctive relief).

20           This action proceeds on a complaint, filed on February 21, 2006, against

21   defendants High Desert State Prison (HDSP) Chief Medical Officer (CMO) S.M. Roche, M.D.,

22   and Dr. Olga Roche.[2]   Plaintiff contends that he arrived at HDSP on November 16, 2004.  As of

23

24           [2] Defendants' filings have previously indicated Dickinson-Boican, rather than Dickinson,
     was this defendant's full surname, but now indicate that she has the same last name as that of
25   defendant Roche.  See Declaration of Dr. Olga Roche. The court will distinguish these
     individuals as defendant S.M. Roche and defendant O. Roche and will direct the Clerk of the
     Court to make the modification in the court's case docket. [The docket having been subsequently
26   modified per the court's Order, filed on August 16, 2007, the court will denominate defendant

the filing of the instant complaint, plaintiff avers that he had had serious medical problems that were not addressed, notwithstanding his filing of grievances to the medical department.  Plaintiff was seen by defendant S.M. Roche on December 7, 2004, who read a copy of the review of records by Dr. Harry A. Khasigian, who testified in a criminal matter about plaintiff's serious medical condition.  Plaintiff was placed on an orthopedic waiting list on that day, 12/7/04, but was not seen by the orthopedic specialist for several months despite having filed many grievances to obtain medical attention.  Reference to plaintiff's exhibits indicates that he was seen by an in-house orthopedic specialist on February 17, 2005, and in that evaluation knee x-rays and a follow-up visit in 60 days were requested.  Complaint, pp. 3-4 & Exhibit A.

On January 14, 2005, due to an incident in the exercise yard, plaintiff was forced to lie down in the exercise yard in the snow.  Due to the degenerative knee disorder and arthritis from which he suffers, the arthritis in his knees was inflamed, causing him excruciating pain.  Plaintiff notified an unidentified correctional officer (C/O), who failed to notify medical personnel.  On January 15, 2005, plaintiff's pain was so intense that he could not move, affecting his daily activities, including hindering him from reaching the lavatory in time to avoid urinating on himself and his bunk.  Id., p. 4.

When plaintiff informed defendant Roche of his serious medical condition and of the severely cold climate at HDSP, all he did was provide plaintiff with Tylenol for the pain of arthritis, which was inadequate.  Plaintiff had been transferred to HDSP from Tracy State Prison, where he had had an active prescription for (Darvastat) Propoxyphene/APOP 100/650 (1) tab, three times a day, prescribed from 11/09/04 through 12/09/04.  The medical staff at HDSP ignored the prescription, giving him only Tylenol.  Id.

When plaintiff saw defendant Dickinson-Boican (now Dr. O. Roche) on January 13, 2005, and informed her that the cold temperatures at HDSP, 35 degrees Fahrenheit and

Dickinson-Boican as defendant. O. Roche, including reference to her declaration supporting the motion for summary judgment].

1    below, exacerbated his arthritis, she told him to complain to Sacramento.  When he sought a

2    transfer away from the cold climate, defendant S.M. Roche denied the transfer.  Id.

3          Plaintiff states that he continues to suffer severe pain from the cold climate at

4    HDSP and that the doctors at HDSP are aware of it and show only deliberate indifference to his

5    serious medical condition in violation of the Eighth Amendment.  Plaintiff attaches as Exhibits A

6    through D, copies of medical chronos, Dr. Khasigian's evaluation, and his American with

7    Disabilities (ADA) Placement Program Verification of which the doctors are aware.  Defendants

8    are aware of plaintiff's ADA status.  Id., p. 5.

9          Plaintiff seeks money damages and injunctive relief in the form of a transfer from

10   High Desert State Prison.

11   Motion for Summary Judgment

12         Defendants move for summary judgment on the ground that plaintiff cannot

13   establish that either of the defendants were deliberately indifferent to his medical needs and each

14   defendant is entitled to judgment as a matter of law.  Motion for Summary Judgment (MSJ), pp.

15   1-2.

16                    *Legal Standard for Summary Judgment*

17         Summary judgment is appropriate when it is demonstrated that the standard set

18   forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

19   there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

20   as a matter of law."  Fed. R. Civ. P. 56(c).

21         Under summary judgment practice, the moving party

22         always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
23         pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
24         demonstrate the absence of a genuine issue of material fact.

25   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

26   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

                                        4

1    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

2    to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

3    after adequate time for discovery and upon motion, against a party who fails to make a showing

4    sufficient to establish the existence of an element essential to that party's case, and on which that

5    party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

6    failure of proof concerning an essential element of the nonmoving party's case necessarily

7    renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

8    granted, "so long as whatever is before the district court demonstrates that the standard for entry

9    of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

10           If the moving party meets its initial responsibility, the burden then shifts to the

11    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

12    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

13    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

14    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

15    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

16    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

17    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

18    material, i.e., a fact that might affect the outcome of the suit under the governing law, see

19    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

20    Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

21    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

22    nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

23           In the endeavor to establish the existence of a factual dispute, the opposing party

24    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

25    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

26    versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

On July 11, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

### *Undisputed Facts*

The following of defendants' undisputed facts (DUFs) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed: DUF # 1. Plaintiff is an inmate at HDSP serving a life sentence for first degree murder. DUF # 2. Plaintiff claims that he arrived at the prison on November 16, 2004. He claims that he suffers from degenerative knee disorders, primarily arthritis. He further claims

that his pain is excruciating and that he arrived at HDSP with a prescription for "(Darvastat)

Propoxyphen," three tablets per day.  Additionally, plaintiff claims that this prescription was

dated November 9, 2004, and expired December 9, 2004.  As to DUF # 2, although defendants

cite only plaintiff's own complaint, Docket Entry (DE) # 1, Part IV, in support of this allegation,

plaintiff objects to it "on the basis that the evidence cited does not support the alleged fact.

Plaintiff's knee condition is far more severe than arthritis."  The court's review of the complaint

reveals that plaintiff refers to arthritis and suffering excruciating pain, referencing "serious knee

disorders and arthritic pain" and the prescription that defendants have set forth.   The gravamen

of the claim is that he was being prescribed Tylenol, an allegedly inadequate pain medication for

his arthritis, and that the cold climate, from which he sought transfer, acts to "inflame" that

condition.  Nothing in the fact as set forth is materially disputed by plaintiff, and this fact is

deemed undisputed.  DUF # 4.  Plaintiff's only allegation concerning Dr. Dickinson-Boican (now

O. Roche) is that she would not change his medication and prescribe narcotic medication when

she examined plaintiff on January 13, 2005.  As to DUF # 4, despite plaintiff's averment that the

evidence cited does not support this fact, the evidence being plaintiff's complaint, DE # 1, Part

IV, attachment, this court's review shows that plaintiff alleges as to this defendant that plaintiff

told her of his serious medical condition, but she told him to complain to Sacramento.

Defendants' conclusion that the complaint alleges only as to her that she would not change his

medication is not unfounded, and, in fact, appears to be strengthened by plaintiff's opposition,

wherein he states that he also gave her a copy of Dr. Khasagian's records review and informed

her of the seriousness of his condition but that she told him there were no narcotics prescribed at

HDSP and to complain to Sacramento and would prescribe only NSAIDs, Ibuprofen, Motrin and

Tylenol.  Opp., pp. 3, 6, citing defendant O. Roche's Dec. in support of MSJ.  This fact must be

deemed undisputed. DUF # 5.  Plaintiff claims that defendant Dr. S.M. Roche "saw" plaintiff on

\\\\\

\\\\\

December 7, 2004,[3] and read a copy of a records review that plaintiff claims was submitted as evidence in his criminal trial.  Plaintiff further claims that plaintiff told defendant S.M. Roche that he (plaintiff) urinated on himself because he could not make it to his toilet due to pain.  DUF # 6.  Plaintiff further claims that defendant S.M. Roche denied plaintiff's request to transfer to a different prison (this occurred on March 24, 2005), even though plaintiff's arthritic condition worsened due to his incarceration at HDSP, caused in plaintiff's opinion by the relatively low ambient temperatures in Susanville, CA (the location of HDSP.)  DUF # 7.  Defendants served interrogatories and a request for production of documents on plaintiff during discovery in this matter.  In response to the interrogatories, plaintiff states that all acts by each defendant that violated his constitutional rights were stated in his complaint.  He does not identify any other actions that he contends support his claim.  The court's review of the exhibit supports this assertion.  DUF # 8.  In response to the request for production of documents, plaintiff states that all documents that provide evidence of constitutional rights violations by each defendant were included in his complaint.  Plaintiff neither identifies nor produces any documents responsive to defendants' requests.  (Defendants cite as support for this fact, MSJ, Exhibit C, plaintiff's responses to defendants' request for production of documents).  While this fact is accurate as far as it goes, the court's review of the document production request indicates that plaintiff did attach his medical records of the treatment he had received for his condition as recorded in Sacramento County Correctional Health Services/Sacramento County Medical Systems, showing plaintiff having prescriptions for, inter alia, Vicodin and Celebrex in 2002 through 2004, and also indicating plaintiff's allergy, alternately, to Ibuprofen and Motrin.  See Exhs. C-1, C-2, C-3 to MSJ.  Moreover, plaintiff avers that he later sent additional documents to defendants as they became available to him.  A review of plaintiff's exhibits in opposition shows that as Exhibit N-1, plaintiff includes a copy of a letter, dated, to the extent legible, "April, 2007," apparently sent

---

[3] Defendants' set forth the date as December 7, 2005, an apparent typographical error.

to defense counsel, stating that plaintiff is therein enclosing "additional documents" he intends to use at trial.  He indicates that the documents he is enclosing were produced among defendants' own production of documents to him.  He also states that he would send any more documents that he anticipates will become available to him in the future.  Moreover, defendants themselves appear to undercut this DUF in referencing (and complaining about) the documents that *were* produced by plaintiff (see DUF # 9 in discussion under *Disputed Facts* below).  Of course, none of this belies that the evidence defendants rely on, plaintiff's responses to defendants request for production of documents did indeed say what defendants indicate.  Thus, as noted, as far as it goes, this fact is undisputed.  DUF # 11.  Darvocet is a "narcotic" pain medication that is highly addictive.  Narcotic pain medications are often prescribed to people who are complaining of musculoskeletal neck and back pain, for short periods of time.  DUF # 12.  MRI scans of the neck and back are not ordered unless a physician suspects injuries to a disc in the spinal cord, and injuries to these areas also frequently require medication such as Darvocet.  DUF # 13. Defendants O. Roche and S.M. Roche, in their professional opinions, do not believe that narcotic medications such as Darvocet should be prescribed for patients who suffer from arthritis. Darvocet and other narcotic medications are highly addictive and should be used sparingly for short-term relief for acute injuries.  DUF # 14.  Arthritis is a chronic condition that typically results in swelling in the affected joints as well as pain.  Non-steroidal anti-inflammatory medications (NSAIDS) are prescribed to patients who suffer from arthritis.  NSAIDS effectively control swelling and relieve pain associated with arthritis.  NSAIDS also do not lead to drug dependence or addiction.  DUF # 16.  Even if the ambient, outdoor temperatures do drop as low as plaintiff alleges, that factor alone does not cause arthritis symptoms to "flare up."  Plaintiff would continue to suffer arthritic symptoms occasionally regardless of where he is incarcerated. Plaintiff has not produced any evidence to refute defendants' O. Roche's and S. M. Roche's opinions on this issue. (16. Declaration of defendant O. Roche; Declaration of defendant S.M. Roche).  Plaintiff maintains that even a layman knows extremely cold weather makes arthritis

1  flare up, and he seeks to dispute the defendants' representations otherwise on the basis that he

2  avers they prescribed medications for him to which he is allergic.  The court takes judicial notice

3  that in the previous Findings and Recommendations, recommending denial of plaintiff's motion

4  for a preliminary injunction in the form of an order for a prison transfer, the court concluded as to

5  this issue, after evaluating the evidence submitted therein, which has not been supplemented in

6  this motion, that "[p]laintiff's knee condition is what it is, and remaining at High Desert will not

7  make it worse.  In addition, the court is not convinced that plaintiff will ever be pain free, and

8  that the colder climate at High Desert will not significantly exacerbate knee pain."  Findings and

9  Recommendations, filed on 8/16/07, p. 15, adopted by Order, filed on 1/11/08.  This fact is

10  deemed undisputed.

11       Plaintiff has submitted his own set of undisputed facts (PUF).  To the extent,

12  defendants state such facts are undisputed, the court includes them herewith.  If the facts are

13  either expressly undisputed, but contain objections, the court sets those forth herein.  Also, where

14  defendants do not expressly state that a fact is either disputed or undisputed but simply interpose

15  objections, the court includes those facts here with the objections included.

16       PUF # 1.  Plaintiff suffers from a history of patellar dislocation, chron[ic] patellar

17  subluxation and patellofomoral malalignment with progressive patellofemoral degeneration, as

18  well as lateral compartment degenerative arthritis, and suprapatellar loose body.  Cervical

19  spondylosis [and] left knee osteophyte formation in the lateral compartment as well as

20  calcification in the medial femoral [condyle].  Defendant objects to the evidence offered in

21  support of PUF # 1.  Exhibit K is inadmissible hearsay without exception (FRE[4] §802) that lacks

22  foundation (FRE§702) and authentication (FRE §901).  Moreover, the document in question does

23  not address plaintiff's condition at the time he filed his complaint and is therefore irrelevant

24  (FRE §§401, 402).  Defendants do not, however, substantively challenge the document's

25

26       [4] Federal Rule(s) of Evidence.

1   authenticity and the court takes judicial notice that this same report was cited in previously

2   adopted Findings and Recommendations.[5]   (See Discussion, infra).   PUF # 2.  If plaintiff were to

3   engage in significant physical activities particularly those involving twisting, jumping, and short

4   bursts of intense activity, he would develop swelling, limp, and difficulties with normal

5   ambulation and function of the left knee due to the subluxation of the patella, the onset of

6   traumatic effusion from his arthritic condition, the possibility of locking within the knee joint of

7   the loose body from the suprapetellar pouch.   Exhibit D to Cmpl. & Exh. K to Opp., Copy of

8   "Review of Records" of plaintiff by Harry A. Khasigian, M.D., dated June 15, 2004.  (Objection,

9   relevance: Plaintiff's ability to engage in twisting, jumping or short bursts of activity is not at

10  issue. (FRE §§401, 402).   Moreover, Exhibit K is inadmissible hearsay not subject to any

11  exception (FRE §802) that lacks foundation (FRE §702) and authentication (FRE §901).

12  Additionally, Exhibit K does not address plaintiff's condition at the time he filed his complaint

13  and is therefore irrelevant. FRE §§401, 402)).  Again, see discussion.  PUF # 3.   Medical records

14  indicate plaintiff has been on Celebrex, and Vicodin for pain for several years.   Plaintiff cites in

15  support Exhibits L1 through L65 to his Opp., which appear to be copies of his medication

16  records.  (Defendant objects to the evidence offered in support of this allegation.   Exhibit L

17  contains documents that are inadmissible hearsay not subject to any exception (FRE §802) that

18  lack foundation (FRE §702) and authentication (FRE §901)).   PUF # 5.  Plaintiff arrived in

19  HDSP from Tracy State Prison with an active prescription for Darvocet pain medication

20  (expressly undisputed with no objection posed).   PUF # 6.  Plaintiff was seen by defendant S.M.

21  Roche on 12/7/04.  Defendant S.M. Roche read the Review of Records (Ex. "K") and placed

22  plaintiff in disability program.  Plaintiff relies on Exh. J-1 to his Opp., a copy of a disability

23  placement program verification CDC 1845, signed and dated by defendant S.M. Roche on

24  12/7/04.  (While expressly undisputed, - - - see also,  DUF # 3 - - -, defendant S.M. Roche

25

26      [5] Findings and Recommendations, filed on 8/16/07, recommending denial of plaintiff's
motion for preliminary injunction, adopted by Order, filed on 1/11/08.

1  objects to Exhibit K as inadmissible hearsay (FRE §802), and on the grounds that if lacks

2  foundation (FRE §702) and authentication (FRE §901)).  PUF # 7.  Defendant S.M. Roche

3  refused to continue previous physician's order of Darvocet pain management medication.

4  (Expressly undisputed that S.M. Roche did not continue the prescription for Darvocet, but

5  defendants' dispute that Darvocet was intended for any condition associated with plaintiff's

6  knee).  PUF # 13.  Plaintiff requested medical transfer to a warmer climate to adduce [sic]

7  preventive medical care.  Defendants denied.  Plaintiff cites Exh. A to Cmpl., plaintiff's request

8  for modification of accommodation, dated 2/21/05, & appeal responses, including second level

9  appeal response, dated 3/24/05, signed by defendant S.M. Roche, denying plaintiff's transfer

10  request.  He also cites interrogatory responses Exh. F-3 and F-4 to Opp., from S.M. Roche,

11  wherein defendant concedes that he did not recommend a transfer on 3/24/05 (or at least says he

12  does not believe he did so).   (Expressly undisputed that the CDCR denied plaintiff's request).

13  PUF # 14.  As of May 24, 2007, someone removed evidence of plaintiff's request for medical

14  transfer out of plaintiff's medical file, tampering with evidence.  Plaintiff cites a copy of a letter

15  from Division of Correctional Health Care Services, dated 5/24/07, concerning plaintiff's 4/6/07

16  correspondence to the Medical Board of California, about the care (or lack thereof) he receives at

17  HDSP for pain management.  The letter states, inter alia, that there is no record of plaintiff's

18  institutional transfer request in his Unit Health Record.  (Objection, this allegation is irrelevant to

19  the facts of this case (FRE §§401, 402)).  PUF # 15. Neither defendant ordered M.R.I.

20  examinations nor x-rays to determine the need for effective pain management medication.

21  Another physician, Dr. French, ordered the x-ray two (2) years after plaintiff arrived in HDSP,

22  citing Exh. O-1(which actually appears to indicate outside services for an MRI of the left knee

23  was denied by Dr. French on 2/15/06), and Exh. O-2 to Opp.(appears to show that Dr. French on

24  10/04/06, denied a request for outside services for an MRI "bilat knees" and that plaintiff was to

25  be referred to Orthopedics), and Exh. E-2, a copy of a radiology report by Radiologist Dr. Ronald

26  Hetrick, finding, inter alia, left knee Osteoarthritis, dated 2/15/06, and right knee Osteroarthritic

change, and suggesting that an MRI of knees might be helpful "if indicated," notes Dr. French as

plaintiff's physician.  (Expressly undisputed, but irrelevant as plaintiff states no reason why

diagnostic tests were necessary when the defendants examined plaintiff. (FRE §§401, 402.))  PUF

# 16.  As a result of the x-rays plaintiff was referred to an outside orthopedic specialist, Dr.

Hyreman, in Redding, Ca.  Dr. Hyreman ordered and administered SYNVISC shots in plaintiff's

knees to manage the severe pain, citing Exh. E-3, copy of physician request for services by Dr.

James on 12/19/06.  (Expressly undisputed that Dr. Hyreman examined plaintiff and provided

treatment, but, according to defendants, irrelevant to the issues in this case. (FRE §401, 402.))

PUF # 18.  Plaintiff was out to court housed in CSP-SAC.  The physician there prescribed

Celebrex. [See Footnote 4].  (Expressly undisputed by defendants, but deemed by them to be

irrelevant to the issues in this case. (FRE §§401, 402)).  PUF # 19.  Plaintiff ran out of Celebrex

and filled out a medication refill request to no avail. [See Footnote 4].  (Expressly undisputed,

but, according to defendants, irrelevant to the issues in this case. (FRE §§401, 402)).

## *Disputed Facts*

DUF # 3.  According to plaintiff's complaint, unidentified doctors initially

"ignored" this prescription and instead gave plaintiff Tylenol for his condition.  (3. Plaintiff's

complaint (Cmpl.), DE #1, Part IV).  Although plaintiff's allegations could have been made with

greater clarity as to when defendant S.M. Roche "simply supplied Tylenol for the arthritic pain,"

and while plaintiff does state, in the context of saying that he arrived at HDSP with a Darvocet

prescription until 12/09/04, that "the medical staff acted to ignore the doctor prescribed

medication and gave me Tylenol," earlier he references having seen defendant S.M. Roche on

12/07/04, who read Dr. Khasigian's review of records of plaintiff's medical condition; plaintiff

also avers that he was put on an orthopedic waiting list on 12/07/04.  Cmpl., pp. 2-3.  Thus,

while defendants are correct that, according to plaintiff, unidentified medical staff (but not

necessarily doctors) ignored plaintiff's prescription and gave him Tylenol, it is not clear that

unidentified doctors were the first to "ignore" his prescription, and the court will deem this fact,

1   DUF # 3, disputed to the extent the evidence for it is contained in plaintiff's complaint.  Beyond

2   that, both in his original complaint (as already noted), as well as in his opposition, plaintiff

3   maintains that he was seen by defendant S.M. Roche on December 7, 2004 (two days before the

4   Darvocet prescription expired) (Complaint (Cmpl.), p. 3, Opposition (Opp.), p. 2).  At that time,

5   plaintiff avers that plaintiff explained his serious medical condition, and gave defendant S.M.

6   Roche a copy of Dr. Harry Khasagian's review of plaintiff's records, wherein plaintiff states a

7   knee condition, far more severe than osteoarthritis was set forth.  Cmpl., p. 3, Opp., pp. 2-3.  In

8   support of his position, plaintiff submits a copy of a disability placement program verification,

9   CDC 1845, signed and dated by defendant S.M. Roche on 12/07/04.  Opp., p. 5, Exhibit J.  This

10  fact is thus disputed.  DUF # 9.  Plaintiff's response to the request for production did include

11  records that appear to have been generated at another correctional facility. These records are not

12  authenticated.  The records relate to plaintiff's complaints of neck and back pain as well as knee

13  pain, mostly during the year 2004.  (9. Plaintiff's responses to defendants' request for production

14  of documents, Exhibit C [including C-1, C-2, C-3]).  Plaintiff maintains that the records that he

15  has produced do not support defendants' contention, although it is not clear to the court whether

16  plaintiff is maintaining that the records show that the medications were for treatment of neck and

17  back, as well as knee pain, or that the records are confined largely to 2004.  The court's review

18  does indicate the records produced also show prescriptions for 2002 and 2003.  It is beyond the

19  scope of this court to attempt to interpret medical records.  DUF # 10.  Various medications,

20  including Darvocet, appear to have been prescribed for plaintiff's complaints of pain. The neck

21  and back complaints by plaintiff in the year 2004 warranted an MRI scan of each area, per the

22  records.  (10. Plaintiff's responses to defendants' request for production of documents, Exhibit

23  C).  Plaintiff disputes that the records submitted show what defendants set forth.  This court's

24  review does show that plaintiff's knee pain is noted in 2002 and 2003, as well 2004, and that,

25  for example, an x-ray of bilateral knee is noted in 2003.  Defendants do not point with specificity

26  to that portion of the records which supports their assessment and the court will find this fact to

14

1    be disputed.  DUF # 15.  In the defendants' professional opinions, plaintiff's diagnosis of

2    arthritis, if true, does not require narcotics and can be managed with NSAIDS such as Ibuprofen

3    (generic for Motrin) or by Tylenol.  Prescribing Darvocet or any other narcotic pain medication

4    to plaintiff could lead to drug dependence and/or addiction, and narcotics will not alleviate any

5    symptoms associated with arthritis. (15. Declaration of defendant O. Roche; Declaration of

6    defendant S. M. Roche.)  Plaintiff disputes this fact on the stated grounds that plaintiff suffers

7    from more than just arthritis in his knees and that he is allergic to NSAIDs, Ibuprofen and

8    Motrin.  He maintains that all [other] physicians knew this and prescribed narcotics for his

9    treatment and that he is not addicted.  The court will find this fact disputed to the extent that

10   plaintiff may have been able to show his allegy to Ibuprofen and Motrin and that he has been

11   diagnosed with some form of Osteoarthritis, but does not find the medical conclusion or analysis

12   itself by defendant medical experst disputed.

13              As to plaintiff's undisputed facts, the following issues are raised with respect to

14   them: PUF # 4.  Plaintiff has been told he needs total knee replacements.  Plaintiff cites Exh. E-1

15   to the Opp., a copy of orthopedic clinic progress notes, dated (somewhat illegibly) 5/19/05,

16   signed by J. W. Rohlfing, M.D., stating in part "Long-term there really is no good answer short

17   of total knees."  ("Disputed: Exh. E-1 does not state that such a surgery is imminent and is

18   therefore speculative as it addresses future events that may occur."  PUF # 8.  Defendant S.M.

19   Roche intentionally interfered with a physician's orders once prescribed.  Plaintiff cites his Exh.

20   F-[2] to Opp., wherein defendant S.M. Roche simply responds that he does not recall what he did

21   on 12/7/04, in response to plaintiff's interrogatory # 4 as to whether he continued the Darvocet

22   prescription; plaintiff cites Exh. H-3 to Opp., wherein defendant S.M. Roche states that he does

23   not believe he prescribed narcotic pain medication from 12/7/04 until 11/27/06 for plaintiff

24   "because plaintiff did not need any such medication."  In defendant S.M. Roche's Dec. (at ¶ 2),

25   also cited by plaintiff, this defendant states that he "declined to prescribe Darvocet" to plaintiff

26   because he "do[es] not believe that his complaints associated with osterarthritis are best treated

1   with narcotic pain medication." (Disputed, defendant S.M. Roche did not interfere with any

2   order, and he did supply plaintiff with Tylenol according to plaintiff's complaint. See Dr.

3   Roche's Declaration In Support of defendants' MSJ,[6] plaintiff's Cmpl., Exhibit A).[7]  PUF # 9.

4   Defendant S.M. Roche prescribed NSAIDS, Ibuprofen, Motrin to treat plaintiff's pain.  Plaintiff

5   cites S.M. Roche's Dec. in support of MSJ.  (Disputed: According to plaintiff's complaint and

6   Exhibit A to his Cmpl., defendant S.M. Roche only supplied Tylenol for plaintiff.  Moreover, see

7   Dr. S.M. Roche Dec. in support of  defendants' Reply to Plaintiff's Opp. to MSJ.  Defendant

8   S.M. Roche did not prescribe Ibuprofen or Motrin).  PUF # 10.  Plaintiff is allergic to

9   medications defendant S. M. Roche prescribed and cannot take them due to serious risk to health.

10   Plaintiff cites the following exhibits to his Opp., in support: Exhs. A-3 through A-7; Exhs. C-5,

11   C-7, L-1 through L-65.  Exhs. A-3 through A-7 appear to be copies of a print-out of plaintiff's

12   prescriptions from 11/16/04 through 2/05/07, for which he placed a request, along with,

13   apparently, a request for medical records generally for the same period, which was granted for a

14   charge of $28.20, and for which he authorized a trust account withdrawal.  The prescriptions list

15   for plaintiff has "Ibuprofen" under the heading of "Allergies" listed on each page.  Exhs. C-5 and

16   C-7 list NSAIDs in his medical records as allergies.  Exhs. L-1 through L-6, show that allergies

17   to Ibuprofen and Motrin are alternately and frequently noted; very rarely nothing at all or

18   "NKDA" is noted under "Allergies" throughout the copies of medical records submitted,

19

20   [6] "Arthritis is a chronic condition that typically results in damage to the affected joints.
Non-steroidal anti-inflammatory medications (NSAIDS) are usually prescribed to patients who

21   suffer from osteoarthritis. NSAIDS, such as Motrin, can effectively control and relieve pain
associated with osteoarthritis. Tylenol, another "over the counter" medication, also can

22   effectively treat pain associated with osteoarthritis. NSAIDS and Tylenol also are not addictive
and can be taken for long-term care on an "as needed" basis. NSAIDS and Tylenol are

23   appropriate medications for Mr. Craver's complaints at the present time." S.M. Roche Dec. In
Support of MSJ, ¶ 4.

24   [7] This exhibit contains a second level appeal response to plaintiff's complaints of
"unbearable knee pain," being forced to sit in the snow, being so incapacitated that he could not

25   walk and urinated on himself, the coldness of his cell.  In the response, dated 3/24/05, signed by
defendant S.M. Roche, defendant notes, inter alia, that plaintiff has been issued "knee braces and

26   a cane and prescribed Tylenol for pain."

1  although the basis for the allergy designation is not set forth.  (Disputed, defendant S.M. Roche

2  did not prescribe any medication for which plaintiff claims an allergy).   PUF # 11. Plaintiff was

3  housed in HDSP for a year before receiving any pain medication, (Tylenol) causing an undue

4  delay in medical treatment.  Plaintiff relies on Exh. A-3 to Opp., showing Acetaminophen

5  prescribed from 12/08/05 until 1/07/06 (evidently prescribed for back pain in .325 mg. dosages

6  of 2 tablets twice a day).  (Disputed, plaintiff admits that Dr. S.M. Roche supplied Tylenol to him

7  – plaintiff's complaint, and Exhibit A to complaint) and admits that he was provided Tylenol

8  when he drafted Exhibit A to his complaint (February 21, 2005).  PUF # 12.  On l/13/05, plaintiff

9  was seen by defendant Dickinson (now O. Roche).  She refused to provide adequate pain

10  medication and told plaintiff to complain to Sacramento, and prescribed plaintiff medications

11  such as NSAIDS, Ibuprofen, Motrin that plaintiff is allergic to, citing Dickinson-Boican Dec.

12  (now O. Roche).  (Disputed, per plaintiff's complaint and Exhibit A to complaint, Dr. O. Roche

13  did not prescribe any Ibuprofen to plaintiff, she simply would not prescribe Darvocet.  Moreover,

14  plaintiff was receiving Tylenol at the time he drafted Exhibit A to his complaint  (February 21,

15  2005)).  PUF # 17. As a result of the x-rays Dr. French prescribed Celecoxib (Celebrex) start

16  10-3-2006 stop: 4-1-2007 100 mg caps.  (Disputed, plaintiff's evidence to support this allegation

17  is Exhibit C to Opp.,[8] which contains inadmissible hearsay not subject to exception (FRE §802).

18  _____

19      [8]  The evidence submitted to support this consists of what appear to be copies of
    prescription labels, a medication administration record and a physician's order for medication.
20  There is no explanation of what condition the prescriptions are for and there is some
    inconsistency as to Dr. French's prescription of Celecoxib.  For example, there is a prescription
21  for 200 mg. of Celecoxib from 10/05/01-10/25/06 (1 capsule a day), and a separate prescription
    from the same physician for 100 mg. caps[sules] from 10/03?/06-4/01/07 (2 capsules a day).
22  Other records show, under the name of Dr. Wedell, a 1 cap a day prescription for 200 mg. of
    Celecoxib start: 8/31/06 stop: 11/20/06.  There is also a prescription label under the name of Dr.
23  Wedell for 1 capsule of 200 mg of Celecoxib (Celebrex) from 9/05/06 to 11/20?/06.  An 8/26/05
    entry on a copy of a physician's order shows a prescription of 200 mg. of Celebrex for 30 days,
24  and notes an allergy to NSAIDS for plaintiff.  HDSP physician orders show an entry for on
    9/28/06 of 200 mg. of Celebrex for 180 days.  Current medications including Celebrex is noted
25  on a copy of interdisciplinary progress notes on 10/16/06, with a reference to NSAIDS as
    allergies.  A copy of plaintiff's request for medication refill of 100 mg caps of
26  Celebrex/Celecoxib is dated 11/02/06.

The documents in Exhibit C are not authenticated (FRE §901), nor is there any foundation for any expert testimony in Exhibit C.  Lastly, according to defendants, Exhibit C does not include any explanation for why plaintiff received Celebrex (FRE §802)).  PUF # 20.  Plaintiff filed a CDC 602 to have Celebrex refilled.  Defendant S.M. Roche denied the refill, interfering with a physician's order, citing Exhs. B-1 through B-7 to Opp.  Among those exhibits, an inmate grievance filed by plaintiff regarding not being permitted, upon his arrival at HDSP, to continue his prescription for the anti-inflammatory Celebrex (even though he was given one pill, indicating its availability, is a second-level appeal response, on 1/18/07,  by defendant S.M. Roche, wherein he denies the appeal, averring that plaintiff would have to be approved for it by both his primary care physician (Dr. James) and the CMO, but that Dr. James did not recommend the prescription.  The first level appeal response, on 11/21/06, noting that plaintiff was being referred to an Orthopedist for a consultation and MRI, was a partial grant in that Dr. James had prescribed plaintiff the alternative of Tylenol for plaintiff's inflammation and pain, but had denied the request for Celebrex on the ground that it was not available at HDSP and that it can cause heart attack and stroke.  (Disputed and irrelevant to the issues in this case. (FRE §§401, 402).  Additionally, defendant S.M. Roche did not deny any refill, as set forth in exhibit B3-B4, he simply denied plaintiff's inmate grievance appeal because plaintiff's primary care physician did not recommend Celebrex).  PUF # 21.  On 1/18/07, defendant S.M. Roche intentionally interfered with a physician's order, denying an active prescription for Celebrex out of civil retaliation, citing the exhibits to Opp., noted above.  (Disputed and irrelevant to the issues in this case. (FRE §§401, 402).  Defendant S.M. Roche did not deny any refill, as set forth in exhibit B3-B4, he simply denied plaintiff's inmate grievance appeal because plaintiff's primary care physician did not recommend Celebrex.   PUF # 22.  Defendants failed to adequately treat plaintiffs severe medical condition.  They allowed plaintiff to live in pain, when other physicians saw the need to treat plaintiff with narcotic pain medications, Celebrex, knee braces, and a walking cane, plaintiff's Exhs. A through O, to his opposition.  (Disputed.  Plaintiff received his

1    cane before he arrived at HDSP- Exhibits I and J to plaintiff's Opp. to defendants' MSJ.

2    Narcotic medications are not necessary to treat arthritis (see the defendants' declarations

3    submitted in support of both the MSJ and Reply to plaintiff's Opp. to MSJ), Celebrex is not

4    a narcotic (Defendant S.M. Roche's Dec. in support of defendants' Reply to plaintiff's Opp. to

5    MSJ, and the presence or absence of a knee brace is irrelevant to the issues in this case.  (FRE

6    §§401, 402.)) PUF # 23.  Defendants admit that it is not outside the scope of the standard of care

7    to provide narcotic pain medication to a patient that is allergic to Motrin, Ibuprofen, NSAIDS,

8    but failed to prescribe any such medication to plaintiff as they were fully aware of plaintiff's

9    medication allergies, citing Exh. P., defendant Dickinson's (O. Roche's) interrogatory responses,

10   set three, as well as those of defendant S.M. Roche.  (Disputed- the Interrogatory response cited

11   by plaintiff clearly states that other NSAIDS should be used if a plaintiff is truly allergic to

12   Ibuprofen.  Undisputed on the point that defendants did not prescribe any of the medications

13   listed by plaintiff. (FRE §§401, 402.)).

14                      *Legal Standard for Eighth Amendment Claim*

15           In order to state a § 1983 claim for violation of the Eighth Amendment based on

16   inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

17   deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

18   285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

19   serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

20   501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

21   1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

22   Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

23           A serious medical need exists if the failure to treat a prisoner's condition could

24   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

25   that a prisoner has a serious need for medical treatment are the following:  the existence of an

26   injury that a reasonable doctor or patient would find important and worthy of comment or

1   treatment; the presence of a medical condition that significantly affects an individual's daily

2   activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

3   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

4   (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

5   grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

6            In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

7   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

8   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

9   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

10  which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

11  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

12  should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

13           It is nothing less than recklessness in the criminal sense – subjective standard –

14  disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

15  1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

16  that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

17  114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

18  of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

19  847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

20  knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

21  obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

22  1981.  However, obviousness per se will not impart knowledge as a matter of law.

23           Also significant to the analysis is the well established principle that mere

24  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

25  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

26  662 F.2d 1337, 1344 (9th Cir. 1981).

1      Moreover, a physician need not fail to treat an inmate altogether in order to violate

2  that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

3  1989).  A failure to competently treat a serious medical condition, even if some treatment is

4  prescribed, may constitute deliberate indifference in a particular case.  Id.

5      Additionally, mere delay in medical treatment without more is insufficient to state

6  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

7  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

8  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

9  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

10  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

11  to provide additional support for a claim of deliberate indifference; however, it does not end the

12  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

13  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

14  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

15  the defendant."  McGuckin, 974 F.2d at 1061.

16      Superimposed on these Eighth Amendment standards is the fact that in cases

17  involving complex medical issues where plaintiff contests the type of treatment he received,

18  expert opinion will almost always be necessary to establish the necessary level of deliberate

19  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

20  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

21  treatment he received equated with deliberate indifference thereby creating a material issue of

22  fact, summary judgment should be entered for defendants.  The dispositive question on this

23  summary judgment motion is ultimately not what was the most appropriate course of treatment

24  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

25  criminally reckless.

26  \\\\\

1        *Discussion*

2            Defendants maintain that denying plaintiff narcotic pain medication does not

3    constitute deliberate indifference, that defendants used their best medical judgment to treat

4    plaintiff by prescribing NSAIDs and/or Tylenol that would not cause addiction and not

5    prescribing narcotics ineffective for the treatment of arthritis.  MSJ, pp. 8-9.  Defendants contend

6    that failure to transfer plaintiff to a different prison does not constitute deliberate indifference and

7    aver that he has no due process or equal protection right to being housed in a particular prison.

8    MSJ, p. 9-10.  Further, they argue that while defendant Roche could recommend a medical

9    necessity transfer, no such necessity exists in this case.  MSJ, p. 10.  They conclude that plaintiff

10   has produced no medical or other evidence to show that a transfer would improve his arthritis

11   and no evidence that a failure to transfer him constitutes deliberate indifference.  MSJ, p. 11.

12           In opposition, plaintiff reiterates the allegations of his complaint.  He notes that on

13   12/7/04, defendant Roche placed him in a disability placement program with restrictions on

14   walking up stairs and providing for lower tier lower bunk housing.  Plaintiff states that one does

15   not qualify under the Americans with Disabilities Act only from suffering from arthritis and that

16   he needs both a cane and knee braces to help him walk.  Plaintiff references again having

17   urinated on himself because he could not get out of bed in time due to swelling and stiffness in

18   "locked up" knees and that he suffers from chronic and substantial pain.  Opp., pp. 8-9.

19           Plaintiff maintains that he is affected by extremely cold temperatures at HDSP.

20   He avers that for several years prior to his being incarcerated at HDSP, orthopedic doctors have

21   diagnosed his (knee) condition as serious and requiring treatment.  He maintains that he

22   underwent orthoscopic surgery in 1992, and has been provided narcotic pain management in lieu

23   of total knee replacements which have not been performed due to his age and the life of plastic

24   knees.  At HDSP, he has been living with severe pain daily.  Opp., pp. 10-11.

25           Plaintiff relies on the records review of Dr. Khasigian to support his contention

26   that his condition is far more serious than arthritis, a report dated June 15, 2004, some five

months before plaintiff arrived at HDSP, which report plaintiff emphasizes again that he showed

defendant S.M. Roche on 12/7/04 and defendant Dickinson (now O. Roche) on 1/13/04.  In fact,

plaintiff maintains, it was on the basis of this report that defendant S.M. Roche placed plaintiff in

the disability placement program.  Plaintiff states that on 12/7/04, while he was with defendant

S.M. Roche, his medical file was open before him (Roche) and that it is therein documented that

plaintiff is allergic to NSAIDs, Ibuprofen and Motrin, allergies plaintiff has had for more than 20

years.  Opp., p. 13, citing supporting exhibits (set forth earlier).

Plaintiff claims that both defendants had his medical files before them when he

was seen by each and that they knew the danger to his health posed by prescribing medications to

him that they declare under penalty of perjury is good for him.  Plaintiff contends that they

disregarded the risk and "[i]n essence attempted to commit medical murder" of him.  Opp., p. 14.

Plaintiff challenges defendants' claim of a lack of authentication of his medical

records, recounting how he forwarded medical records to defendants which defendants provided

in their motion, records he received from the Sacramento County Jail.  Plaintiff states that the

records were produced as a result of an inmate grievance to the HDSP records office, for which

he includes the exhibits and that they date from October, 2001 through 2004.  He maintains that

the first time he received medication at HDSP was on 10/31/05, as reflected in the records and

that it was for asthma.  He asserts that a Dr. Cox prescribed Acetaminophen (Tylenol) for back

pain due to a fall in the shower on 12/08/05.  Plaintiff states that he received no pain medication

for a year and has been living in excruciating pain.  MSJ, pp. 14-15.

Plaintiff avers that defense counsel's declaration that Exhibit C to the MSJ is a

true and correct copy of the documents plaintiff sent is deceptive because documents were

omitted.  Plaintiff brings up the prescription he was provided by Dr. French for Celebrex which

he states again was begun on 10/3/06 to go until 4/1/07, but requests for refills on 11/2/06 and

12/13/06 were denied.  MSJ, p. 15.  The court has previously noted that the Celebrex

prescriptions in plaintiff's exhibits appear to be prescribed for various (and even overlapping)

1  dates, but there is a notation for such a prescription among them.

2        Plaintiff contends that the previously noted denial at the second level by defendant

3  S.M. Roche of Celebrex, which occurred on 1/18/07, was a retaliatory act by this defendant.

4  Plaintiff faults this defendant for evasive responses to plaintiff's interrogatory requests.  MSJ, p.

5  16.   The court finds some support for plaintiff's accusation of evasiveness by this defendant.

6  For example, to plaintiff's inquiry (# 4) as to whether or not S.M. Roche became aware on

7  12/7/04 of whether or not plaintiff had an active prescription for Darvastat [sic] propoxphine

8  [sic] APAP 100/650, the fact of which prescription defendants do not dispute in their motion,

9  after posing objections, this defendant responded: "I do not recall specifically what I did on

10  December 7, 2004." Opp., Exh. F-2.  Asked whether he recommended plaintiff's being housed

11  in CTC on 12/7/04, without waiving objections, S.M. Roche stated: "I do not recall specifically

12  what I did on December 7, 2004.  I do not recall recommending plaintiff be housed anywhere,

13  though." Id., Exh. F-4.  With regard to the incident plaintiff describes as having occurred on

14  3/24/05, wherein he claims to have been in too much pain to walk due to the extreme cold

15  exacerbating his arthritis and urinating on himself, plaintiff asks if S.M. Roche arranged a

16  medical transfer for plaintiff, to which defendant responded, after objections: "I do not recall

17  specifically what I did on March 25, 2005.  I do not believe that I recommended a medical

18  transfer for plaintiff on that date, however."  Id.  In response to plaintiff's request for admission

19  (# 8) whether in a second level response on January 18, 2007, defendant stated that HDSP does

20  not prescribe Celebrex and that plaintiff would not be receiving any.  In response, defendant after

21  an objection, stated: "I do not recall this 602 response.  While Celebrex is not on the formulary,

22  HDSP can obtain any medication."  Id., Exh. G-3.  While it is not surprising that this defendant

23  could not recall specific events or grievances on specific dates, it is unclear to the court why there

24  would not have been some record of interactions regarding plaintiff's medical issues or

25  defendant's own grievance responses that he could have consulted, or why, if he himself kept

26  such records and/or had access to them, he would not have reviewed same before responding to

1  plaintiff's discovery requests.

2      Plaintiff goes on to complain that this defendant continues to interfere with his

3  treatment by another physician by discontinuing a prescription (Celebrex).  See PUF #s 18 and

4  19, above.  Plaintiff references the fact that an HDSP medical official removed his request for a

5  medical transfer from his medical file.  He also recounts that Dr. French ordered xrays for his

6  knees and that there was a radiology report on 2/15/06.  Opp., p. 16, see PUF #s 14 & 15.

7  Plaintiff declares under penalty of perjury that the documents he attaches as exhibits are "true and

8  correct" and that he mailed exhibits to defense counsel pursuant to Fed. R. Civ. P. 26.  Opp., p.

9  18.

10      In their reply, defendants counter that plaintiff by his opposition has not provided

11  any reason why the defendants could be found deliberately indifferent by failing to prescribe

12  narcotic medication for plaintiff's arthritic knee because he has not presented expert testimony to

13  demonstrate how such medication would benefit his condition.  Defendants contend that

14  plaintiff's argument that they tried to commit "medical murder" is "misplaced" because

15  "defendants herein cited Ibuprofen as an example of a non-steroid anti-inflammatory drug

16  (NSAID)."  Reply, p. 1.

17      Defendants state that no record produced by plaintiff, to "nearly" all of which they

18  continue to object as inadmissible hearsay, shows that either defendant or any doctor prescribed

19  Motrin for him.  Moreover, plaintiff they maintain has been prescribed an NSAID in having been

20  prescribed Celebrex, which plaintiff evidently believes is a narcotic.  Defendants maintain that

21  the reference to defendant S.M. Roche's denying plaintiff Celebrex misstates the denial as

22  interference by this defendant because the appeal response states that both the treating physician

23  and the defendant S.M. Roche must agree that the medical prescription is necessary, and the

24  treating physician did not find it so.  In addition, defendants note that plaintiff did not include

25  this allegation in his discovery responses.  Reply, p. 2.

26  \\\\\

1          On the point of Celebrex being an NSAID, defendant S.M. Roche submits a

2   declaration stating unequivocally that it is an NSAID and if plaintiff claims to be allergic to all

3   NSAIDs he is wrong because he was prescribed this medication without claiming ill effects.

4   Defendant S.M. Roche's Dec. in support of Reply, ¶¶ 2-3.  This defendant further avers that

5   when he referenced Ibuprofen in his previous declarations (i.e., in support of an opposition to

6   plaintiff's motion for preliminary injunction and in opposition to the motion for summary

7   judgment), defendant "was simply providing a common example of an NSAID that is typically

8   given to people who present with symptoms associated with osteoarthritis.  Based on the records

9   I reviewed in connection with this court's order that I provide a current update of the plaintiff's

10  medical condition as part of his request for injunctive relief, I am unaware of any doctor

11  prescribing him Ibuprofen."  Id., ¶ 4.  In his declaration in support of MSJ, defendant S.M. Roche

12  stated the following at ¶ 4 (fully set forth in footnote 6, supra):

13          Non-steroidal anti-inflammatory medications (NSAIDS) are
            usually prescribed to patients who suffer from osteoarthritis.
14          NSAIDS, such as Motrin, can effectively control and relieve pain
            associated with osteoarthritis. Tylenol, another "over the counter"
15          medication, also can effectively treat pain associated with
            osteoarthritis. NSAIDS and Tylenol also are not addictive
16          and can be taken for long-term care on an "as needed" basis.
            NSAIDS and Tylenol are appropriate medications for Mr. Craver's
17          complaints at the present time.

18  In addition, defendant O. Roche (also under the name of Dickinson-Boican) stated in her MSJ

19  supporting declaration, at ¶ 4.

20          Arthritis is a chronic condition that typically results in pain due to
            "wear and tear" of joints. Non-steroidal anti-inflammatory
21          medications (NSAIDS) are prescribed to patients who suffer from
            arthritis. NSAIDS, such as Motrin, effectively control swelling and
22          relieve pain associated with arthritis. Tylenol also helps control
            pain associated with arthritis. NSAIDS and Tylenol also are not
23          addictive and can be taken for long-term care on an "as needed"
            basis.

24

25  The court observes that in neither of these declarations does either defendant appear to have

26  considered whether or not plaintiff might be allergic to, for example, Motrin.

1          Defendant S.M. Roche also declares (in the declaration in support of the Reply)

2   that he denied plaintiff's second level appeal for continuing his Celebrex prescription because his

3   treating physician, Dr. James, did not recommend it, and without that approval, defendant could

4   not. Id., ¶ 4. Defendant goes on to state that while Celebrex "effectively controls symptoms of

5   osteoarthritis for short periods of time," it "is not recommended for permanent use and therefore

6   discontinuing this medication after an inmate's prescription is completed is very common." Id., ¶

7   6. Defendant S.M. Roche admits to not being aware of why Dr. James did not continue the

8   prescription, but states that he does not disagree with the opinion based on the information

9   plaintiff provided.

10          Plaintiff has produced some documentation to show that the Celebrex prescription

11  by Dr. French was to stop on 4/1/07; the denial issued by defendant S.M. Roche undisputedly

12  occurred on 1/18/07, which would suggest that he did not actually wait for the prescription to run

13  out as he references in his declaration before it was discontinued. While defendants are correct

14  that the allegations regarding the discontinuing of the Celebrex prescription occurred after the

15  incidents alleged in the complaint, they are not entirely irrelevant if plaintiff is setting them forth

16  as part of a continuing pattern. While defendants' assertions that plaintiff's allegation in his

17  complaint regarding the evident removal by an unnamed official of his transfer request from his

18  medical file cannot be ascribed to defendants is also correct (Reply, p. 5), plaintiff may well be

19  using it to suggest that the record of the request may have been deliberately removed.

20          Defendants object mightily the lack of authentication of plaintiff's medical

21  records submitted by plaintiff. Objection to evidence in support of Reply. However, the court

22  finds that defendants themselves, while having submitted expert declarations in support of the

23  motion for summary judgment, did not attach any of plaintiff's medical records to them. The

24  documents submitted by defendants that are evidently part of plaintiff's medical records are

25  evidently simply those which plaintiff apparently served on them as they became available to

26  him. The only document from plaintiff's medical records submitted by defendants, other than

1   those that the defendants produced in opposition to the preliminary injunction motion, is attached

2   as Exhibit A to defendant's counsel's declaration in support of the Reply.  See Declaration of

3   James W. Walter in support of Reply.  This exhibit is an MRI report of plaintiff's left knee

4   (which was included in opposition to the p.i. motion) and references, inter alia, "mild

5   osteoarthritis of the left knee...."

6          Since defendant S.M. Roche references his declaration in support of the

7   opposition to plaintiff's motion for preliminary injunction and since this is the only place where

8   defendants actually appear to have referenced plaintiff's medical records or reviewed his

9   complaints (and only in response to an Order, filed on 6/15/07,  requiring that defendants

10   supplement their opposition to plaintiff's injunctive relief motion), the court finds it useful to

11   quote extensively from the Findings and Recommendations therein.

> Defendants contend that plaintiff's claim that he needs a narcotic
> pain medication, such as Darvocet, for osteoarthritis pain is not
> substantiated.  Opposition (Opp.), p. 1, citing Exhibit A,
> Declaration of defendant Dr. S. M. Roche, HDSP Chief Medical
> Officer (S.M. Roche Dec I); Exhibit B, Declaration of defendant
> Dr Olga Roche, formerly Dr. Dickinson-Boican (O. Roche Dec);
> and Exhibit C, Declaration of Dr. S.M. Roche in Support of
> Supplemental Brief in Opposition to plaintiff's request for
> injunctive relief (S.M. Roche Dec II).  Defendant S.M. Roche
> states that, in his professional medical opinion, Darvocet is
> inappropriate to treat plaintiff's pain complaints because it is highly
> addictive and because it is not used for chronic conditions, but
> rather is effective for short-term relief from severe musculoskeletal
> injuries.  S.M. Roche Dec I, ¶ 3.  Defendant Dr. S.M. Roche
> describes arthritis as a chronic condition, typically resulting in
> damage to the affected joints and that non-steroidal
> anti-inflammatory medications (NSAIDS) are usually prescribed
> for patients who suffer from osteoarthritis.  Id., ¶ 4.  Motrin is an
> example of a NSAID that can effectively control and relieve
> osteoarthritic pain, and Tylenol, another over-the-counter
> medication, can be effective in the treatment of such pain;
> NSAIDS and Tylenol are non-addictive, can be taken on an
> "as-needed" basis for long-term care and are appropriate
> medications for plaintiff's complaints at this time, according to
> defendant S.M. Roche.  Id.  Further, plaintiff's claim that the
> weather conditions at HDSP cause his arthritis to worsen or "flare
> up" is incorrect because osteoarthritis is not caused by cold weather
> or snow, and does not flare up in such conditions.  Id., ¶5.  Rather,
> weather changes can cause symptoms of osteoarthritis to worsen

temporarily, but such changes occur practically anywhere.  Id.  A person with osteoarthritis in one climate will have arthritis even in warmer climates.  Id.

Defendant Dr. O. Roche agrees with defendant Dr. S.M. Roche that Darvocet would not be an effective control for plaintiff's pain, that it is highly addictive, and is only effective in the short-term for relief from severe musculoskeletal injuries. O. Roche Dec, ¶ 3.  Defendant O. Roche describes arthritis as a chronic condition, typically resulting in pain due to joint "wear and tear." Id., ¶ 4.  Dr. O. Roche also states that NSAIDS are prescribed for patients with arthritis, that the NSAID Motrin controls arthritis pain and swelling effectively, that Tylenol controls arthritis pain, and that NSAIDS and Tylenol are non-addictive and can be taken long term "as needed."  Id.

Defendant S. M. Roche attaches the chart notes for plaintiff's medical treatment for the past six (6) months, observing that plaintiff suffers, according to his evaluation, "from a mild case of osteoarthritis in his right knee."  S.M. Roche Dec II, ¶ 3.  A February 20, 2007, MRI scan revealed mild arthritis, but no structural knee damage.  Id.  According to S.M. Roche, plaintiff has not asked for treatment specific to his knee since November of 2006. Id. ¶ 4.  Although he did mention knee pain on May 4, 2007, defendant S.M. Roche declares that plaintiff has not sought further treatment or new medication since the February 20, 2007, MRI.  Id.  Plaintiff has an active Tylenol prescription, two tablets, three times daily, as needed for pain, of which he has a supply in his cell and for which he needs no medical assistance or examination to take, according to defendant S.M. Roche.  Id.

Over the past six months, plaintiff has complained of many other pain and ailments; plaintiff has been diagnosed with asthma and provided with an inhaler, which he refuses to use, states defendant CMO Roche.  Id. ¶ 5.  Defendant S.M. Roche also avers that plaintiff has demonstrated a failure to follow medical advice following other examinations.  Id.

During his treatment on May 4, 2007, the treating physician had to summon a correctional officer due to plaintiff's outburst.   S.M. Roche Dec II, ¶ 6.  During this episode, plaintiff "was able to move freely and swiftly without the aid of a cane....[t]his ability to move on his arthritic knee is important, as it proves the pain that plaintiff complains of is not truly debilitating."  Id.

Despite defendant S.M. Roche's belief that plaintiff is receiving good care for his arthritis as well as other medical complaints, Dr. S.M. Roche intends to schedule an appointment for plaintiff with a rheumatologist, declaring that should the specialist indicate that plaintiff needs medical care and prescriptions other than Tylenol, "medical staff will re-evaluate plaintiff's condition."  S.M. Roche

Dec II, ¶ 7.

Dr. S. M. Roche concludes by reinforcing, and indeed expanding upon, his medical evaluation in his first declaration (Exhibit A): [I]t would be imprudent to prescribe narcotic pain medication to plaintiff for pain associated with arthritis. Narcotic pain medication would produce a feeling of temporary euphoria for plaintiff, during which feelings of pain throughout his body would be dull. Narcotic medication would not reduce swelling associated with arthritis and would not "cure" plaintiff's arthritis. Since narcotic pain medication is highly addictive, the potential detriment of prescribing this type of medication to plaintiff herein is far outweighed by any nominal benefit plaintiff might experience. Prescribing narcotic pain medication to plaintiff herein, for complaints of pain associated with osteoarthritis, would be bad medical practice and should be discouraged by all.

Defendants' Exhibit C, S.M. Roche Dec II, ¶ 8.

Reply
Plaintiff contends that his knee condition is far more severe than as characterized by defendants. Plaintiff, a pro se party, does not properly authenticate his copies of his medical and other records, but for the purposes of this motion, there is nothing to suggest they are inaccurate. As Exhibit A to his reply, plaintiff includes a copy of what he describes as a placement chrono provided by Dr. Rohlfing, wherein the box is checked indicating that plaintiff suffers from musculoskeletal disorder. Plaintiff submits the exhibit in an effort to belie defendant S.M. Roche's evaluation that plaintiff suffers only from osteoarthritis. Reply, pp. 1-2. The court notes that in his first declaration, S.M. Roche stated that Darvocet is inappropriate to treat plaintiff's pain complaints due to its addictive properties and because it is not used for chronic conditions, but rather is effective for short-term relief from severe musculoskeletal injuries. S.M. Roche Dec I, ¶ 3. Thus, whether or not plaintiff has a "musculoskeletal disorder" (which is marked on the form as a reason for restricted duty) or, suffers from a chronic condition only, is not made clear, nor is the significance of the difference fully explored.

Plaintiff also takes defendant S.M. Roche to task for submitting what plaintiff terms a "doctored up" MRI, showing only mild osteoarthritis of the right knee. In his declaration, as noted above, defendant S. M. Roche states that plaintiff suffers "from a mild case of osteoarthritis in his right knee." S.M. Roche Dec II, ¶ 3. Plaintiff's Exhibit B is, according to plaintiff, a radiology report ordered by a Dr. French on 2/15/06, which sets forth the following as impressions:
> 1) Left knee: Osteoarthritis. Findings suggesting prior medial and lateral collateral ligament attachment injuries on the femoral side. 2) Right

30

knee: Osteoarthritic change.  Findings suggesting
collateral ligamentous laxity. 3) MRI of the knees
may be helpful if indicated.

Exhibit B to Reply.

Plaintiff points to Exhibit D to his complaint (which has evidently
become Exhibit K to his opposition to the motion for summary
judgment defendants have filed).  This document is identified on
letterhead of the "Pacific Evaluations Medical Group" as a review
of records by Dr. Harry Khasigian, dated June 25, 2004.  Dr.
Khasigian's review in 2004 noted that the records indicate that
plaintiff "has intermittently been on Celebrex and Vicodin for
pain," and that he has "used a cane or crutch intermittently."
Complaint, Exhibit D.  The court will not quote extensively from
Dr. Khasigian's medical evaluation because the court lacks the
medical expertise to interpret the evaluation, but sets forth the
following excerpt:

> The provisional diagnosis regarding his left knee
> would be history of patellar dislocation, x-ray
> findings consistent with chronic patellar subluxation
> and patellofemoral misalignment with progressive
> patellofemoral degeneration.  Also included would
> be evidence of lateral compartment degenerative
> arthritis and a suprapatellar loose body.

Exhibit D to Complaint, p. 2.

In the record evaluation, Dr. Khasagian makes the assessment that
significant physical activity by plaintiff would likely result in
swelling, a limp and difficulty walking due to the condition of his
left knee.  He further opines that various activities involving the
left knee, activities not described in the report but evidently
inquired about by the report's intended recipient, would be more
likely than not to produce pain and swelling and diminished gait
function and would preclude normal running and jumping and
require the need for "anti-inflammatories and pain medication."
Id.

Plaintiff then goes on to challenge defendant S. M. Roche's
credibility for stating that plaintiff has not sought further medical
treatment for his knees since March of 2006.  In fact, however, in
his second declaration, defendant S.M. Roche states that plaintiff
has not asked for treatment specific to his knee since November
(not March) of 2006.  S.M. Roche Dec II , ¶ 4.  The defendant does
seem to undercut this representation by adding that plaintiff did
mention knee pain on May 4, 2007, but has not sought new
medication or additional treatment for his knee since his February
20, 2007, MRI scan.  S.M. Roche Dec II , ¶¶ 3-4.

\\\\\

31

As to the November, 2006, date at which point defendant S.M. Roche initially states plaintiff did not seek further treatment for his knee, plaintiff attaches, as Exhibit C to his reply, a copy of a Health Care Services Physician Request, dated 12/19/06, which indicates, following "Medical Necessity" on the form: "Synvisc injection into both knee [sic] recommended by Dr. Hyerman" with the requesting physician signed as "M. Miller," and "Wm. Hyerman, M.D.," listed as "consultant."  The request is dated approved on 12/20/06.  Plaintiff states that he was transported to Redding in March, 2007, and received the shots from Dr. Hyerman in both knees once a week for three weeks; the injections were designed to relieve pain for six to nine months.  Reply, p. 2. Plaintiff asks the court to require defendants to provide the records for this treatment because special transportation had to be arranged to escort plaintiff to Redding.  Plaintiff also points out that one of the medical record exhibits for plaintiff attached to defendant S.M. Roche's (second) declaration in opposition to plaintiff's motion, which plaintiff attaches as his own Exhibit D, is [a] physician's order which notes plaintiff's allergy to Ibuprofen and NSAIDS.  In fact, the court's review indicates that in the authenticated medical records submitted by defendant S.M. Roche, there are at least four instances where either plaintiff's allergy to Ibupofen and NSAIDS, or his allergy to Ibuprofen alone, is noted.

Plaintiff avers that defendant S.M. Roche does not know whether or not plaintiff has Tylenol in his cell, as defendant states.  Reply, pp. 2-3.  Plaintiff goes on to complain about not having received any pain medication from HDSP during his first year there and that he first received the "non-effective" Tylenol on 12/08/05, even though he was seen by defendant S.M. Roche on 12/07/04, (a year earlier).  Reply, p. 3, Exhibit E.  Plaintiff then complains of a lack of response for medical conditions not the subject of this lawsuit, such as blurred vision or his request for an HIV test.  Reply, p. 3. He claims that defendants have submitted "lies" to the court and are trying to commit "medical murder" of him.  Id.

........................................................................................

While the court finds that defendants adequately refute plaintiff's assertions that his condition is deleteriously affected by the cold and snow at HDSP, it finds somewhat disturbing that defendant S.M. Roche's review of plaintiff's medical records apparently did not yield the evidence of the synvisc shots plaintiff claims to have received in March of 2007, in both knees, and for which he provided at least a copy of the 12/19/06 physician request; that this defendant is evidently not aware that plaintiff also has some form of osteoarthritis in his left, as well as his right, knee; that at least one physician has found that plaintiff has "musculoskeletal disorder;" and that plaintiff has been repeatedly noted to have an allergy to Ibuprofen and NSAIDS.  It is also disturbing that, while

1    defendant O. Roche, also touts the efficacy of treatment of arthritis
     with NSAIDS, that she also does not reference plaintiff's apparent
2    allergy to such medication.

3    On the other hand, plaintiff does not present expert medical
     evidence to refute the medical knowledge of defendants insofar as
4    their assessment of the appropriateness of long-term treatment for
     his pain in the form of addictive narcotics.  Nor does his concern
5    that his osteoarthritis and pain is exacerbated because he is
     subjected to the cold temperatures at HDSP legitimated by the
6    expert medical testimony presented, as noted.  That plaintiff may
     not have received the pain medication he sought in the past does
7    not warrant a medical transfer either at this time, particularly when
     plaintiff describes having recently received a series of synvisc
8    injections to his affected knees that are supposed to relieve his pain
     for up to nine months.  The apparent lack of thoroughness of
9    defendant S.M. Roche's review and analysis of plaintiff's relevant
     medical record and condition, including the outright confusion
10   presented in his finding that plaintiff did not seek further medical
     treatment for his knee (or knees) at a certain point, when plaintiff
11   not only apparently did do so, but subsequently also appears to
     have received such treatment, does not bode particularly well for
12   the outcome of the pending dispositive motion, at least from
     defendants' perspective.  However, plaintiff, on the other hand,
13   does not make the requisite showing on this motion that a medical
     transfer from HDSP is warranted, or that plaintiff should be
14   immediately prescribed narcotic pain medication.

15   Findings and Recommendations, filed on 8/16/07, pp. 5-11, 14-15, adopted by Order, filed on

16   1/11/08.

17          The court finds that defendants' objection to plaintiff's use of copies of his

18   medical records for lack of authentication and/or foundation should be overruled for purposes of

19   this motion.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could

20   be made admissible at trial may be considered on summary judgment); see also Aholelei v.

21   Hawaii Dept. of Public Safety, 220 Fed. Appx. 670 (9th Cir. 2007).  While it is true that plaintiff

22   does not submit the declaration of a medical expert, there is enough within the medical records

23   plaintiff submits to strongly suggest that these defendants did not, for example, even ascertain

24   whether plaintiff was allergic to medications for which his medical records expressly reflect that

25   he has an allergy.  Given that the only expert declarations which are submitted are those of

26   defendants and they do not appear to have actually reviewed plaintiff's records prior to

1   submitting their initial declarations in support of the motion for summary judgment, genuine

2   issues of material fact remain as to whether they adequately reviewed his medical records at the

3   times at issue herein before determining and prescribing, or indeed, not prescribing the

4   appropriate medication for plaintiff's osteoarthritic knee condition.

5           Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for

6   summary judgment, filed on June 20, 2007 (#27), be denied.

7           These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9   days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within ten days after service of the objections.  The parties are advised

13  that failure to file objections within the specified time may waive the right to appeal the District

14  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: 02/21/08

16                                          /s/ Gregory G. Hollows

17                                          _____
                                            GREGORY G. HOLLOWS
                                            UNITED STATES MAGISTRATE JUDGE

18  GGH:009
    crav0362.msj

19

20

21

22

23

24

25

26